IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THERRAL HATFIELD,                    )
                                     )
          Petitioner,                )
                                     )
     v.                              )          Civil Action No. 2:13cv324-WKW
                                     )                    (WO)
UNITED STATES OF AMERICA,            )
                                     )
          Respondent.                )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* motion by Therral Hatfield ("Hatfield") to

vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Doc. No. 1.[1]

## I.  BACKGROUND

In July 2010, a federal grand jury returned an indictment charging Hatfield with two

counts of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and one count of using a

firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  Hatfield's case

went to trial in November of that year.   The Eleventh Circuit summarized the evidence

adduced at trial:

> The first victim (L.H.), a female adult who was Hatfield's former fiancée,
> testified that she and her daughter, the second victim, were kidnapped at
> gunpoint, held against their will, and transported across state lines by Hatfield
> [from New Orleans, Louisiana, through Biloxi, Mississippi, and past Mobile,

---

[1] References to document numbers ("Doc. No.") are to those assigned by the Clerk of
Court to pleadings docketed in this civil action (No. 2:13cv324-WKW) or, where indicated, in
the underlying criminal case (No. 2:10cr55-WKW).  All page references are to those assigned
by CM/ECF.

Alabama, before Hatfield was pulled over and arrested by an Alabama state trooper near Brewton, Alabama]. This testimony was corroborated by several additional witnesses, including a husband and wife couple who encountered the victims at a gas station [in Alabama] where L.H. passed the wife a note indicating that she was being kidnapped. Another witness, a friend of Hatfield, testified that Hatfield phoned him on the date of the incident, and indicated over the phone that L.H. and the child were being held against their will.

Specifically, L.H. explained that on the day of the kidnapping, her son was with Hatfield, who had refused to give him back. After some back and forth, Hatfield agreed to leave the son with one of his friends for L.H. to pick up. When she arrived at the spot where she was supposed to pick up her son, she called a friend because she was nervous. As she stopped to pick up her son, the man with her son pulled out a firearm, got in the car, and told her to drive down a few houses, at which point Hatfield emerged. Hatfield entered the car and the original man left. He forced L.H. to drive to a gas station, where they filled up. L.H. testified that neither she nor her daughter were in the car voluntarily.

After getting gas, they got on the interstate heading east. According to L.H., at some point after additional stops, the car needed gas. During that gas stop, L.H. asked a woman for help and left a note in the restroom with a description of her car, asking for help.

Carol Conley testified that she was traveling along I-65 [in Alabama] when she stopped at a gas station. She went into the bathroom, and encountered a woman, identified as L.H., with a young boy and girl. L.H. stated she was being kidnapped, and wanted to give Ms. Conley a note with her name, tag number, and other information so that Ms. Conley could give it to the police. Ms. Conley never got the note, however. During her encounter, the victim seemed very calm.

Mike Conley, Carol Conley's husband, also testified at trial. He testified that, after stopping at a gas station, his wife returned from the restroom and told him a woman had approached her and asked for help because she was being kidnapped by her boyfriend. Mr. Conley entered the gas station and noticed a man who was later identified as Hatfield. He called the sheriff's department and gave them what he thought was the tag number of the car the man was driving. At some point, a note was recovered at the gas

2

station, which Mr. Conley believed to be a ransom or help note.

Hatfield's friend, Barry Smith testified that he received a phone call from Hatfield on the date in question stating that he had his family, L.H. and his son, with him, and his "life [was] over." Hatfield told Smith that his family was "not really" with him willingly. Smith testified that he also overheard L.H. say that she did not want to die.

*United States v. Hatfield*, 466 F. App'x 775, 778 (11th Cir. 2012) (footnoted material in original moved into body of text; some bracketed material added) .

On November 17, 2010, the jury returned a verdict finding Hatfield guilty of all counts in the indictment. After a sentencing hearing on June 29, 2011, the district court sentenced Hatfield to 384 months in prison, comprising concurrent terms of 300 months for the two kidnapping counts and a consecutive term of 84 months for the firearm count.

Hatfield appealed, arguing that (1) his rights under the Speedy Trial Act were violated, (2) there was insufficient evidence to sustain his convictions, and (3) the district court abused its discretion by excluding the testimony of one of his witnesses. On March 16, 2012, the Eleventh Circuit affirmed his conviction and sentence. *Hatfield*, 466 F. App'x 775.

On May 15, 2013, Hatfield filed a § 2255 motion raising the following claims:

1    The Government knowingly introduced false evidence and allowed its witnesses to testify falsely.

2.    The Government failed to disclose *Brady* material.

3.    Trial counsel rendered ineffective assistance by–

(a)    failing to prepare and investigate potential defenses, properly question Government witnesses, and contact and subpoena defense

3

          witnesses;

      (b)    failing to object to the Government's introduction of false evidence;

      (c)    failing to obtain *Brady* material; and

      (d)    denying Hatfield his right to testify.

4.    Appellate counsel rendered ineffective assistance by–

      (a)    failing to appeal the district court's ruling disallowing recross-examination of a Government witness; and

      (b)    failing to appeal the district court's ruling admitting unduly prejudicial evidence about an incident that occurred prior to the alleged kidnapping.

Doc. No. 1 at 4-7; Doc. No. 2 at 3-19.[2]

On January 8, 2014, Hatfield filed an amendment to his § 2255 motion, adding a claim that his trial counsel rendered ineffective assistance by failing to interview kidnapping victim Latasha Hill (referred to as "L.H." in the Eleventh Circuit's opinion on direct appeal), because doing so would have revealed that the Government presented false evidence through Alabama State Trooper Adam Robinson.  Doc. No. 17.

On July 10, 2015, Hatfield filed another amendment to his § 2255 motion, this time adding a claim that the Government engaged in prosecutorial misconduct by presenting false

---

[2] The claims in Hatfield's motion and supporting submissions are not always clearly delineated, frequently overlap, and are set forth in a discursive fashion.  For organizational and analytical purposes, the court has recast some of the claims in a more appropriate presentation.

evidence that relied on misinformation that Hatfield was expelled from high school for assaulting a coach.  Doc. No. 30.

The Government argues that Hatfield's substantive, non-ineffective assistance of counsel claims are either meritless or procedurally barred from collateral review because they could have been raised on direct appeal, but were not.  Doc. No. 9 at 9-11; Doc. No. 22 at 5-6; Doc. No. 32 at 1-3.  The government further argues that Hatfield's claims of ineffective assistance of counsel are meritless and fail to satisfy the standards for relief in *Strickland v. Washington*, 466 U.S. 668 (1984).  Doc. No. 9 at 11-21; Doc. No. 22 at 6-9.

After due consideration of the parties' submissions, the record, and the applicable law, the court concludes that Hatfield's § 2255 motion should be denied without an evidentiary hearing.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.[3]

## II.   DISCUSSION

### A.   General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for collateral attack on final judgments of conviction are limited.  A federal prisoner is entitled

---

[3] Most of Hatfield's substantive, non-ineffective assistance of counsel claims have correlating claims in his motion where counsel is alleged to have been ineffective for failing to raise the substantive claim.  Because such matters are intertwined, the court's Recommendation will address these substantive claims in the context of its discussion of Hatfield's various claims of ineffective assistance of counsel.  Accordingly, the court pretermits discussion of whether Hatfield has established cause and prejudice to excuse his failure to raise his otherwise procedurally defaulted substantive claims on direct appeal.  *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994).

5

to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Hatfield*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice"). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

## B.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland*

6

*v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006).   Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *see Strickland*, 466 U.S. at 687-88 & 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial

7

fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)

("[A]n analysis focusing solely on mere outcome determination, without attention to whether

the result of the proceeding was fundamentally unfair or unreliable, is defective.").

"Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive

the defendant of any substantive or procedural right to which the law entitles him."  *Id*. at

372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland*

inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court

decides that one of the requisite showings has not been made, it need not decide whether the

other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through

direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of

appellate counsel may be shown if the movant can "establish . . . that counsel omitted

significant and obvious issues while pursuing issues that were clearly and significantly

weaker. . . .  Generally, only when ignored issues are clearly stronger than those presented,

will the presumption of effective assistance of counsel be overcome."  *Mayo v. Henderson*,

13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has held a criminal defendant's appellate counsel is not required

to raise all nonfrivolous issues on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have

emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).

### 1.   *Failure to Prepare and Investigate Potential Defenses, Properly Question Government Witnesses, and Contact and Subpoena Defense Witnesses*

Hatfield claims that his trial counsel rendered ineffective assistance by failing to prepare and investigate potential defenses, properly question Government witnesses, and contact and subpoena witnesses in his defense.[4] Doc. No. 1 at 4; Doc. No. 2 at 2, 12-17.

Addressing this claim at length, Hatfield's trial counsel, Richard K. Keith, states:

> Mr. Hatfield's allegation that I did not "prepare or put up a good defense at trial" is without merit. Mr. Hatfield was accused of kidnapping his ex-fiancée, Ms. Hill, and her seven-year-old daughter, T.C., at gunpoint. Both Ms. Hill and T.C. gave statements that Mr. Hatfield was supposed to drop their son (T.H.) off at a friend's house and Ms. Hill was going to pick him up. Ms. Hill was already afraid of Mr. Hatfield because of an incident that occurred three weeks prior when Mr. Hatfield fired a gun in her direction because she refused to have sex with him, and because of an incident that happened the day before at McDonald's where he punched her in the face. Ms. Hill was on the phone with her friend, Crystal Flowers, during the arranged pick up. Ms. Hill saw T.H. in the street and was approached by an unknown man with a gun. He put T.H. in the car, got in and put the gun to her head and told her to drive. She drove down about five houses until she saw Mr. Hatfield appear. Mr. Hatfield jumped into the car and the unknown man jumped out of the car and gave Mr.

---

[4] Hatfield's allegations in this regard are scattered throughout his motion. Some of those allegations are intertwined with other claims of ineffective assistance of counsel. Where appropriate, those allegations are addressed in other sections of this Recommendation below.

Hatfield the gun.  Mr. Hatfield put the gun to T.H.' s head and told Ms. Hill to drive or else he would kill everyone in the car.  Ms. Flowers, still on the phone, overheard Ms. Hill yell he has a gun and she called 911.  That was the beginning of a seven-hour car trip that began in New Orleans, LA, and ended near Brewton, AL, with Mr. Hatfield's arrest.

I tried to convince the jury that Mr. Hatfield and Ms. Hill had gone on this trip together willingly; however, in the end, the jury believed otherwise. It was the testimony of Barry Smith (and particularly the victim) that convicted Mr. Hatfield.  When asked by the Prosecutor if Mr. Smith had talked with Mr. Hatfield on the day in question, Mr. Smith started crying and could not answer. After establishing that Mr. Smith was Mr. Hatfield's best friend, that he was going to be the best man at Mr. Hatfield and Ms. Hill's wedding, and that they talked every day, the Prosecutor again asked whether or not he talked to him on the day of the kidnapping.  Again, Mr. Smith went to tears.  Mr. Smith finally answered, "Yes."  He was then asked what the conversation consisted of, and he responded with, "Hatfield called me and said I don't know what I am doing, life is over, I have my family with me.  I asked him were they there willingly?  And since they were on speaker, Ms. Hill answered and said, 'NO – I don't want to die,' and Hatfield said, 'not really.'  I told him to just let them out or turn around."  The Government had the phone records showing that Mr. Hatfield and Mr. Smith talked on the day in question for 4 minutes and 37 seconds at 12:43 P.M.

This case was completely and effectively prepared for trial.  I thoroughly cross-examined all of the Government's witnesses and represented Mr. Hatfield in a professional manner.  The evidence against Mr. Hatfield was overwhelming.  Mr. Hatfield's claim that I did not contact and subpoena witnesses for his defense is without merit.  I sent two private investigators to New Orleans, LA, and Biloxi, MS, twice to identify and interview all potential witnesses.  There were no fact witnesses for the defense except Officer William Burgamy and the Court ruled that his testimony would be excluded.[5]

---

[5] The defense hoped to present testimony from Burgamy, an officer with the Biloxi, Mississippi, Police Department, that he had seen a man, woman, and small boy on an apparent family outing in a vehicle near Biloxi Beach sometime around the date of the incident and that the woman did not appear to be in distress.  *See discussion, United States v. Hatfield*, 466 F. App'x 775, 778-79 (11th Cir. 2012).  After considering a proffer of Officer Burgamy's expected testimony, the district court concluded that there was almost nothing connecting the officer's

(continued...)

All witnesses for the defense were character witnesses. I contacted the witnesses as identified by the private investigators and interviewed them. The former lawyers also sent private investigators to New Orleans, LA. I also met with their investigators and were given their notes. Based on all the information from Mr. Hatfield and the private investigators, I subpoenaed 14 character witnesses and one fact witness, Officer William Burgamy. However, based on the events that transpired at trial, the defense strategy changed. The Defendant was at all times apprised of the defense strategy and was comfortable with it. Mr. Hatfield knew that if his character witnesses testified then the Government's adverse witnesses would have an opportunity for rebuttal; therefore, the Defendant agreed not to call his character witnesses.

I met with Mr. Hatfield at the jail fifteen times in a span of four months. During the last two meetings I spent the time preparing Mr. Hatfield for trial. I visited Mr. Hatfield at the Montgomery City Jail on the following dates for the following amounts of time:

August 14, 2010 - 42 minutes
August 20, 2010 - 1.1 hours
August 23, 2010 - 1.5 hours
August 30, 2010 - 1.8 hours
September 9, 2010 - 24 minutes
September 14, 2010 - 2.2 hours
September 24, 2010 - 1.2 hours with the investigator
October 4, 2010 - 1.2 hours
October 6, 2010 - 1.3 hours with the investigator
October 12, 2010 - 1.3 hours
October 14, 2010 - 1.6 hours with the investigator

---

[5](...continued)

testimony to the events in question. *Id*. at 779. Officer Burgamy could not remember the exact date or location of the alleged encounter. The encounter he remembered involved a man, a woman, and one child, as opposed to the two children who were with Hatfield and Hill. He also remembered the man he saw looking different than Hatfield, leading him to speculate that the event he observed did not, in fact, involve Hatfield. He remembered the small boy wearing different clothes than those the boy with Hatfield was wearing. *Id*. The district court excluded Officer Burgamy's testimony under Fed. R. Evid. 403, finding that what scant probative force his testimony would have would be vastly outweighed by the potential for confusing the issues, misleading the jury, and wasting the court's time. Case No. 2:10cr55-WKW, Doc. No. 148, Trial Tr. III at 146.

> October 22, 2010 - 1.4 hours
> November, 4, 2010 - 1.6 hours
> November 8, 2010 - 2.1 hours with the investigator
> November 9, 2010 - 1.7 hours.

Doc. No. 5 at 1-4.

The record supports attorney Keith's contention that he performed as well as possible – even admirably – in light of the bad facts of his client's case. Hatfield fails to establish that any act of preparation and investigation by Keith was professionally unreasonable or prejudicial. Nor does he suggest a potential defense not presented by Keith with a reasonable likelihood of success. Finally, he shows no deficiencies in Keith's questioning of Government witnesses or deficiencies in Keith's efforts to contact and subpoena defense witnesses. Hatfield's failure to demonstrate deficient performance by Keith or any resulting prejudice precludes his receiving any relief on this claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687-88 & 694.

### 2.    *Failure to Object to Introduction of "False Evidence"*

Hatfield claims that his attorney Keith rendered ineffective assistance of counsel by failing to object to the Government's introduction of false evidence against him. Doc. No. 1 at 4, 7; Doc. No. 2 at 2-11, 14-17. In this regard, Hatfield alleges that Alabama State Trooper Adam Robinson testified falsely that he found a small box of bullets inside the vehicle that Hatfield was driving after pulling him over on April 21, 2010, near Brewton, Alabama, in the course of the kidnapping. Doc. No. 2 at 3-9, 15. Hatfield also alleges that Latasha Hill testified falsely that she found a gym bag belonging to Hatfield in the trunk of

12

the vehicle a day or two after Hatfield's arrest.  *Id.* at 8-11, 15-17.  Relatedly, Hatfield

maintains that Keith should have subpoenaed a video of the search of the vehicle on April

21, which he speculates would have revealed that Trooper Robinson did not find a box of

bullets in the vehicle and that there was no gym bag in the vehicle when the search was

conducted.  *Id.* at 15-16.

Trooper Robinson testified that after he pulled Hatfield over on April 21, he found a

loaded .45 caliber semiautomatic handgun on the driver's side of the vehicle, within easy

reach of Hatfield,[6] and a small box of .45 caliber, hollow-point bullets.  Case No. 2:10cr55-

WKW, Doc. No. 144, Trial Tr. I at 57, 60-65, 68-70.  Trooper Robinson could not recall if

he found the box of bullets in the vehicle's passenger compartment or in the trunk, or how

the box of bullets came to his attention.[7]  *Id.* at 83-87.

---

[6] Hatfield does not contest Trooper Robinson's testimony that he found the loaded handgun – which was admitted in evidence at trial – inside the vehicle within Hatfield's reach.

[7] The following exchange took place during attorney Keith's cross-examination of Trooper Robinson:

Q.  Okay.  And where were the box of bullets?

A.  I don't remember where the bullets were.

Q.  You didn't go get them?

A.  I retrieved them, but I couldn't tell you to this day where they were, where I retrieved them.

Q.  Where is your – you have – you inventory items you take out of someone else's car, right, their own personal property?

(continued...)

Latasha Hill testified that, a day or two after Hatfield's arrest, while she was getting an oil change for the vehicle,[8] she found Hatfield's gym bag,[9] which she had seen Hatfield carrying on the day of the kidnapping, in the vehicle's trunk.  *Id*., Doc. No. 145, Trial Tr. II at 144, 150, 165-67.  Hill turned the bag over to FBI Special Agent Andres Durango.  *Id*. at 166-67.  Inside the bag were, among other things, various articles of Hatfield's clothing, personal hygiene items, and several bungee cords.  *Id*. at 250-52.  At trial, the Government

---

[7](...continued)
     A.  Sir?

     Q.  When you pull a car over and arrest people or do whatever and take their car, you certainly make an inventory of what personal property you take from others when you pull them over on the highway, right?

     A.  We include it on the report, yes.

     Q.  And what all did you – so did you take a box of bullets out of that car or not?

     A.  I just – I did.  And failed to put where I retrieved them from on there.

     Q.  And you don't remember?

     A.  No, sir.

     Q.  Were they inside the car or in the trunk?

     A.  Again, I don't remember.  They could have been in the trunk.  They could have been inside the car.  I just don't know.

Case No. 2:10cr55-WKW, Doc. No. 144, Trial Tr. I at 83-84.

[8] Hill was the vehicle's owner.  Case No. 2:10cr55-WKW, Doc. No. 144, Trial Tr. I at 79.

[9] The bag is variously described as a gym bag or duffel bag.

14

admitted the bag and most of its contents into evidence through Hill's testimony.  *Id*.

Hatfield asserts that neither the box of bullets nor the gym bag was in the vehicle when he was arrested.  He alleges that such evidence was manufactured by the Government. Addressing Hatfield's claim that he rendered ineffective assistance by failing to object to the admission of this allegedly false evidence (through the testimony of Trooper Robinson and Latasha Hill), attorney Keith states:

> Mr. Hatfield's claim that I allowed manufactured/tampered evidence to be brought trial and did not object to or file a motion to suppress evidence is without merit.  There were no grounds to suppress the duffel bag in the trunk of the car.  I objected to the duffel bag being entered into evidence; however, the judge overruled the objection.  Mr. Hatfield's other claims about tampered or manufactured evidence are nonsensical.  Nothing in Officer Robinson's testimony was tainted.  He could not remember if the box of ammunition was found in the trunk or not.  The ammunition box was placed into evidence (see FBI evidence sheet).
>
> [Hatfield's claim that Keith was ineffective for] fail[ing] to subpoena and investigate the State Troopers video of the search of the car on 04/21/10 to prove no "bag" was in the trunk and that Trooper Robinson was not the one to retrieve a box of .45 caliber bullets from the car is without merit.  The petitioner claims that "he was never in possession of the bag until after 03/26/10."  The defendant's bag and bullets were both seized and admitted into evidence.  There was no real issue pretrial that the subject bag and bullets belonged to anyone else other than the defendant.  It does appear that in Special Agent Andres Durango's 4/27/10 report, that the victim discovered the subject bag still located in the trunk on 04/23/10 (2 days after the kidnapping).

Doc. No. 5 at 4.

The allegedly "false evidence" Hatfield refers to in this claim is chimerical.  He wholly fails to demonstrate that the Government manufactured evidence regarding the box of bullets and gym bag found in the vehicle or that Trooper Robinson and Latasha Hill

testified falsely about such evidence.[10]  He further fails to demonstrate that a video of the search of the vehicle would have had any exculpatory value.  Consequently, he has not shown that counsel performed deficiently by failing to object to the introduction of "false evidence" or that he was prejudiced by counsel's failure to object.  *Strickland*, 466 U.S. at 687-88 & 694.  He is entitled to no relief based on this claim of ineffective assistance of counsel.

### 3.   *Failure to Interview Latasha Hill*

In an amendment to his § 2255 motion, Hatfield contends that Keith was ineffective for failing to interview Latasha Hill regarding her trial testimony.  Doc. No. 17 at 2-3.  Hatfield reasons that, had Keith done so, he would have learned from Hill that Trooper Robinson testified falsely that he found the box of bullets in the vehicle Hatfield was driving on the day of the kidnapping.  *Id*.  Hatfield submits an affidavit that he obtained from Hill in December 2013, in which Hill states that Trooper Robinson testified falsely that he found the box of bullets in the vehicle upon Hatfield's arrest because the box of bullets was actually in the gym bag that she later found in the trunk of the vehicle and turned over to the FBI.  Doc. No. 17-1 at 2.  Hatfield argues that such information could have been introduced to impeach Trooper Robinson during cross-examination.  Doc. No. 17 at 2-3.

First, Hill's affidavit stating that the gym bag she found in the trunk of the vehicle contained a box of bullets does not preclude the possibility that Trooper Robinson found a

---

[10] Trooper Robinson testified that he did not conduct a full search of the vehicle.  Case No. 2:10cr55-WKW, Doc. No. 144, Trial Tr. I at 99-100. Hill testified that another officer, and not Robinson, searched the vehicle at the scene of Hatfield's arrest.  *Id*., Doc. No. 145, Trial Tr. II at 166.  She stated that she did see anybody search the trunk of the vehicle.  *Id*.

box of bullets in the vehicle upon Hatfield's arrest.   Thus, Hill's statement does not demonstrate that Trooper Robinson testified falsely.[11]   Moreover, Hill's affidavit regarding this matter is insignificant to the case at large.   As noted above, Trooper Robinson testified that he could not recall where in the vehicle the box of bullets was found, or how it came to his attention.   In cross-examining Trooper Robinson, Keith vigorously challenged the trooper's recollection of where, or even if, he actually located the box of bullets.   Case No. 2:10cr55-WKW, Doc. No. 144, Trial Tr. I at 83-87.   Thus, Hatfield's suggestion that Keith could not conduct effective cross-examination of Robinson without interviewing Hill is belied by the record.   Further, the issue of the box of bullets – and where and when it was discovered – was irrelevant to Hatfield's conviction.   Hatfield was neither charged with nor convicted of any offense related to ammunition.   Hill's own affidavit, moreover, acknowledges that there was a box of bullets in the vehicle (in Hatfield's gym bag) during the kidnapping.   Finally, it is undisputed that Trooper Robinson found a loaded handgun inside the vehicle within Hatfield's reach.

Hatfield fails to demonstrate that he was prejudiced by Keith's failure to interview Hill regarding her trial testimony.   *Strickland*, 466 U.S. at 687-88 & 694.   He is entitled to no relief based on this claim of ineffective assistance of counsel.

---

[11] Although not evidence adduced at trial, the Presentence Investigation Report ("PSI") indicates that the box of bullets located in the vehicle upon Hatfield's arrest contained 25 rounds of .45 caliber, hollow-point bullets and that 8 rounds of .45 caliber bullets were located in the gym bag that Hill later found in the trunk of the vehicle and turned over to the FBI.  PSI at 8-9, ¶¶ 22 & 25.

### 4.   *Failure to Obtain <u>Brady</u> Material*

Hatfield claims that Keith rendered ineffective assistance of counsel by failing to obtain *Brady* material,[12] specifically, a copy of a 911 telephone call made by Latasha Hill on March 26, 2010 (when Hill and Hatfield lived together in Louisiana), to report a physical assault by Hatfield during which Hatfield fired a gun.  Doc. No. 1 at 4, 7; Doc. No. 2 at 12-15.  Hatfield maintains that a copy of Hill's 911 call could have been used to impeach Hill at trial.  *Id*. at 14-15.

Addressing Hatfield's claim, Keith states:

> The defendant's claim that I failed to request a 03/26/10 911 phone call by the victim concerning the defendant shooting a gun in the bedroom is without merit.  While the defendant may characterize the 911 phone call as "favorable material," this incident was the subject of a motion *in limine*,[13] as the incident was actually bad character evidence and highly prejudicial to the defendant as it involved yet another incident of the defendant threatening the victim with a gun.  The 911 phone call would only have [lent] credibility to the victim's testimony, instead of impeachment material.

Doc. No. 5 at 5.

In her trial testimony, Hill stated that she believed Hatfield had tried to shoot her (but missed) during the March 26, 2010, incident.  Keith vigorously cross-examined her on this subject and suggested that the firearm had accidentally discharged.  Case No. 2:10cr55-

---

[12] *See Brady v. Maryland*, 373 U.S. 83 (1963), requiring the prosecution to disclose exculpatory evidence within its possession.

[13] *See* Case No. 2:10cr55-WKW, Doc. No. 73.  The district court denied the defense's motion *in limine*.  At trial, Keith informed the district court that he had listened to the recording of the 911 phone call and did not wish to play the recording before the jury.  *Id*., Doc. No. 148, Trial Tr. III at 131.

WKW, Doc. No. 145, Trial Tr. II at 270-78.  Hatfield fails to cite any exculpatory evidence contained in Hill's 911 phone call and merely speculates that it might have contained impeachment material.  Hatfield does not show that Keith performed deficiently by failing to obtain a copy of the 911 call or that he was in any way prejudiced by Keith's failure to do so.  *Strickland*, 466 U.S. at 687-88 & 694.  Consequently, is not entitled to relief based on this claim.

### 5.    *Denial of Right to Testify*

Hatfield cursorily asserts that Keith rendered ineffective assistance of counsel by denying him his right to testify.  Doc. No. 2 at 16; *see* Doc. No. 11 at 20-21.

Addressing Hatfield's assertion, Keith states:

> Mr. Hatfield's claim that he told me he wanted to testify, and begged to testify, and that I tricked him into not testifying is simply not true.  I advised Mr. Hatfield that, in my opinion, he should not testify because it would open the door to the Government's rebuttal witnesses.  I thoroughly explained to him on multiple occasions that if he did not testify, then our defense strategy was going to be to rest the case immediately.  Before he made the decision, Mr. Hatfield, myself, my law clerk, one of his former lawyers, Aylia McKee, and one of his former investigators, Johnny Johnson, had a meeting in the holding cell next to the courtroom where Ms. McKee and Mr. Johnson also adamantly explained to him that it would be in his best interest to rest his case without any testimony.  Mr. Hatfield made the decision not to testify and to rest his case. This decision was made on sound legal strategy.

Doc. No. 5 at 5.

At trial, after the Government rested, Keith made the following representation to the district court:

> I have – prior to today and of course today and all during this week

19

have been talking with Mr. Hatfield about his right to testify and how he has that right and how he has the right not to testify and you tell the jury they wouldn't hold any inference against him or – as he doesn't have the burden of proof and all that, Judge. And we've had various different conversations about whether he should or shouldn't testify

And as the Court is aware and as I've instructed Mr. Hatfield, he gets to decide whether he goes to trial or take a plea deal. And the other thing he gets to fully decide with my counsel, of course, is whether or not he elects to testify in his defense. And I am comfortable with his decision not to testify, and he's made that decision not to testify.

Case No. 2:10cr55-WKW, Doc. No. 148, Trial Tr. III at 131.

Outside the presence of the jury, the district court then questioned Hatfield regarding

whether he wished to testify:

THE COURT: Alright. Mr. Hatfield, would you stand, please, sir? Have you had conversations with your counsel about this matter?

THE DEFENDANT: Yes.

THE COURT: And you've sought his advice as to whether you should or should not testify; is that correct?

THE DEFENDANT: That's correct.

THE COURT: All right. You've just heard his representations to the Court. Do you – do you feel comfortable that y'all have had adequate time to talk about it and think about it?

THE DEFENDANT: Yes.

THE COURT: And you think that's in your best interest?

THE DEFENDANT: Yes.

THE COURT: All right. And then are you telling me that you choose not to testify in view of the fact that you have the right to testify if you wish, but you're choosing not to testify voluntarily and of your own free will after

seeking the advice of counsel?

THE DEFENDANT:  Yes.  That's correct.

THE COURT:  Okay.  Thank you, sir.

Case No. 2:10cr55-WKW, Doc. No. 148, Trial Tr. III at 132-33.

It is disingenuous for Hatfield to claim that Keith deprived him of his right to testify. As the trial transcript shows, Hatfield declared under oath that he understood his right to testify, that he discussed the decision whether or not to testify with Keith, that it was his own decision not to testify, and that his decision in this regard was of his own free will.  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  "[I]f an accused desires to exercise [his] constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred." *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) (citation omitted). Furthermore, Hatfield does not state what testimony he would have offered that might have caused the jury to view the case differently; consequently, he fails to demonstrate prejudice by showing a reasonable possibility that the results of the proceeding would have been different had he testified.  *See Fishbone v. Sec'y for Dep't. of Corrs*., 165 F. App'x. 800, 801-02 (11th Cir. 2006) (defendant not prejudiced by trial counsel's alleged ineffective assistance in failing to inform him he had the right to testify when, even in light of defendant's proposed testimony, there was no reasonable possibility that result of

21

proceedings would have differed had defendant testified).

Because Hatfield fails to demonstrate that Keith's performance in this regard was professionally unreasonable or that he was prejudiced by Keith's performance, *Strickland*, 668 U.S. at 687-88, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 6. *Failure to Appeal Ruling Disallowing Recross-examination of Government Witness*

Hatfield contends that his appellate counsel rendered ineffective assistance by failing to appeal the district court's ruling disallowing his trial counsel from conducting recross-examination of Alabama State Trooper Adam Robinson.  Doc. No. 1 at 5; Doc. No. 2 at 17-18.

A defendant must be permitted sufficient cross-examination to allow the jury to adequately assess the witnesses' credibility.  *United States v. Adams*, 133 F. App'x 642, 646 (11th Cir. 2005).  "However, 'a defendant has no constitutional right to recross-examination.'"  *Id*. (quoting *United States v. Ross*, 33 F.3d 1507, 1518 (11th Cir. 1994).  "A defendant nonetheless does have a limited right to recross-examination where a new matter is brought out on redirect examination."  *Id*.  Subject to the Sixth Amendment, the trial court has discretion to limit recross-examination.  *See United States v. Beale*, 921 F.2d 1412, 1424 (11th Cir. 1991).

Hatfield's trial counsel, Mr. Keith, conducted a vigorous cross-examination of Trooper Robinson.  Hatfield does not point to new matters brought out on the Government's

redirect examination of Trooper Robinson or explain how recross-examination of Trooper Robinson would have benefitted his defense. Consequently, he does not demonstrate that his appellate counsel was ineffective for failing to raise this issue on appeal. This claim does not entitle Hatfield to any relief.

### 7.    *Failure to Appeal Admission of Unduly Prejudicial Evidence*

Hatfield contends that his appellate counsel rendered ineffective assistance by failing to appeal the trial court's ruling allowing Latasha Hill to present "unduly prejudicial" testimony about the incident that occurred on March 26, 2010, when Hatfield physically assaulted Hill and fired a gun inside their residence as she made a 911 phone call to report the incident. Doc. No. 1 at 5; Doc. No. 2 at 18-19.

The March 26, 2010, incident was highly relevant evidence of the nature of Hatfield and Hill's relationship when the kidnapping took place. Because of the incident, Hill broke off her relationship with Hatfield, and that break-up precipitated the kidnapping. *See* Case No. 2:10cr55-WKW, Doc. No. 145, Trial Tr. II at 77-78, 86-87. The incident provided evidence of Hatfield's motive and intent to take Hill unwillingly out of Louisiana, as well as evidence of why Hill would not have agreed to go anywhere with Hatfield on the date of the kidnapping. (Hatfield had made statements following his arrest in which he claimed that he and Hill had agreed to go on a vacation together.) The incident was evidence that went to a specific element of the offense, i.e., that Hill was an non-consenting victim rather than a willing participant.

23

Federal Rule of Evidence 403 provides that courts may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."  Fed. R. Evid. 403.  "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008).  In doubtful cases, "[t]he balance under Rule 403 should be struck in favor of admissibility." *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989).

Here, the district court correctly found that the probative value of evidence about the March 26, 2010, incident was not outweighed by the danger of undue prejudice.  *See* Case No. 2:10cr55-WKW, Doc. No. 144, Trial Tr. I at 9-11.  Because the district court's ruling was correct, Hatfield establishes neither deficient performance nor resulting prejudice in his appellate counsel's failure to appeal the district court's ruling allowing the admission of such evidence.

### 8.   *Evidence Regarding Hatfield's Expulsion from High School*

In an amendment to his § 2255 motion, Hatfield asserts that the Government engaged in prosecutorial misconduct by presenting false evidence that relied on Latasha Hill's claim that Hatfield was expelled from high school for assaulting a coach.  Doc. No. 30 at 1-4. First, Hatfield does not demonstrate that he was not expelled from high school for assaulting a coach.  Second, the district court granted the defense's motion *in limine* to prevent Hill from testifying that Hatfield was expelled for assaulting a coach, finding that the incident

was too remote to be relevant.  Case No. 2:10cr55-WKW, Doc. No. 144, Trial Tr. II at 72.
No evidence was admitted at trial regarding Hatfield's expulsion from high school.
Hatfield's claim here lacks merit and it entitles him to no relief.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28
U.S.C. § 2255 motion filed by Hatfield be DENIED with prejudice, as the claims therein
entitle him to no relief.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said
Recommendation on or before **September 24, 2015**.  Any objections filed must specifically
identify the findings in the Magistrate Judge's Recommendation to which the party is
objecting.  Frivolous, conclusive, or general objections will not be considered by the District
Court.  The parties are advised that this Recommendation is not a final order of the court and,
therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the
Magistrate Judge's report shall bar the party from a *de novo* determination by the District
Court of issues covered in the report and shall bar the party from attacking on appeal factual
findings in the report accepted or adopted by the District Court except upon grounds of plain
error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v.
Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*,

661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 10th day of September, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE